# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

Case No. 21-3079

The Satanic Temple,

*Appellant,*

v.

City of Belle Plaine, Minnesota, et al,

*Appellee.*

Case No. 21-3081

The Satanic Temple,

*Appellant,*

v.

City of Belle Plaine, Minnesota, et al,

*Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
District Court Civil Nos. 0:19-cv-01122-WMWand 0:21-cv-00336-WMW
District Court Judge Wilhelmina M. Wright

**BRIEF OF APPELLEES**

**GREENE ESPEL PLLP**
Monte A. Mills, Reg. No. 030458X
Katherine M. Swenson, Reg. No. 0389280
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
mmills@greeneespel.com
kswenson@greeneespel.com
(612) 373-0830

Attorneys for the City of Belle Plaine

## SUMMARY OF THE CASE

This case is about two resolutions passed by Belle Plaine. The Enacting Resolution created a limited public forum in the City Park. Months later, the Rescinding Resolution ended the limited public forum. This closure was consistent with the Enacting Resolution, in which Belle Plaine expressly reserved the right to close the limited public forum. While it existed, Belle Plaine issued two permits under the Enacting Resolution. A director of the Temple received one of the permits. A local club received the other permit. But unlike the local permit holder, the Temple did not place its display in the City Park while the opportunity existed.

The Rescinding Resolution applied equally to all. It closed the limited public forum for all. Belle Plaine's resolutions did not violate any constitutional rights. Nor did the resolutions violate RLUIPA. Further, the permit Belle Plaine granted did not constitute a promise that must be enforced to avoid injustice under the doctrine of promissory estoppel. The district court correctly ruled in Belle Plaine's favor on all claims and correctly dismissed the second lawsuit that the Temple filed later based on the same two resolutions and the same permit. This Court should affirm. Belle Plaine does not believe oral argument is necessary, but requests 15 minutes if it happens.

i

## TABLE OF CONTENTS

SUMMARY OF THE CASE .................................................................................. i

TABLE OF CONTENTS ..................................................................................... ii

STATEMENT OF THE CASE ............................................................................. 1

A.    Procedural overview ................................................................................ 1

B.    Without Belle Plaine's permission, the Veterans Club placed a soldier display in the City Park but later removed it. ............................ 2

C.    On February 6, 2017, Belle Plaine's Council considered, but did not vote to approve, a limited public forum policy. ............................... 3

D.    Before the next Council meeting, the Temple planned its display. ....... 3

E.    Before it was aware of the outcome of the Council's vote, the Temple began designing and planning to construct the display. .......... 4

F.    On February 21, 2017, Belle Plaine established a limited public forum policy. ........................................................................................... 5

G.    Reason Alliance Ltd. applied for a permit under the limited public forum policy. .................................................................................. 6

H.    Before Belle Plaine approved a permit, the Temple's directors understood that the display might be in City Park for only one year and that it may be required to be removed at any time. ................ 7

I.    On March 29, 2017, Belle Plaine granted two permits: one to Reason Alliance Ltd. and another to the Veterans Club. ........................ 8

J.    The Temple was more interested in showcasing the display in its gallery, where it could charge admission fees to see it, than placing it in City Park, where no admission fees could be charged. ................................................................................................... 9

Appellate Case: 21-3079    Page: 4    Date Filed: 04/04/2022    Entry ID: 5143291

K.      Belle Plaine ended the limited public forum policy. ..............................11

L.      The Temple collected more money from promoting and exhibiting the display than it paid to have the display made. ...............13

SUMMARY OF LEGAL ARGUMENT .................................................14

LEGAL ARGUMENT .........................................................................15

I.     The district court properly dismissed the Temple's constitutional claims. ......................................................................................15

     A.     The free-exercise claims were defective. .......................................16

     B.     The free-speech claims were defective. ........................................21

     C.     The equal-protection claim was defective. ..................................24

II.    The district court properly dismissed the Temple's claim under the Religious Land Use and Institutionalized Persons Act of 2000. .....................................................................................28

III.   The district court properly denied the Temple's motion to amend its complaint for untimeliness, failure to show good cause, and futility. ............................................................................30

     A.     The Temple's motion to amend was untimely and failed to show good cause. ............................................................................31

     B.     The Temple's motion to amend was futile. ...................................32

          1.     The amended free-speech claim was futile. .........................33

          2.     The amended free-exercise claim was futile. ......................34

          3.     The amended establishment-clause claim was futile. ........35

          4.     The amended equal-protection claim was futile. ..............37

          5.     The amended due-process claim was futile. .......................40

Appellate Case: 21-3079    Page: 5    Date Filed: 04/04/2022 Entry ID: 5143291

IV.   The district court properly granted summary judgment to Belle Plaine on the Temple's promissory-estoppel claim. ..................... 41

    A.   The permit was not a clear and definite promise. ....................... 42

    B.   Belle Plaine did not intend to induce reliance on the permit as a promise, and the Temple did not reasonably rely upon the permit. ..................................................................... 50

    C.   No injustice exists here. ............................................................... 53

V.   The district court did not err in dismissing the Temple's second lawsuit against Belle Plaine. ..................................................................... 57

    A.   Res judicata barred the second lawsuit. ...................................... 57

    B.   The second lawsuit's claims failed as a matter of law. ............... 60

VI.   The district court did not abuse its discretion in granting sanctions against the Temple's counsel. ................................................. 61

CONCLUSION ....................................................................................... 62

CERTIFICATE OF COMPLIANCE .................................................... 63

CERTIFICATE OF SERVICE .......................................................... 634

Appellate Case: 21-3079    Page: 6    Date Filed: 04/04/2022    Entry ID: 5143291

# TABLE OF AUTHORITIES

**Federal Cases**                                                             **Page(s)**

*Am. Jewish Cong. v. City of Beverly Hills,*
90 F.3d 379 (9th Cir. 1996) ...................................................19

*Ambassador Books & Video, Inc. v. City of Little Rock, Ark.,*
20 F.3d 858 (8th Cir. 1994) ...................................................37

*Ball v. City of Lincoln,*
870 F.3d 722 (8th Cir. 2017) ..................................................23

*Bi-Metallic Inv. Co. v. State Bd. of Equalization,*
239 U.S. 441 (1915) ...........................................................27

*Bolderson v. City of Wentzville,*
840 F.3d 982 (8th Cir. 2016).................................................27

*City of Geneseo v. Utilities Plus,*
533 F.3d 608 (8th Cir. 2008) ............................................42, 53

*City of Geneseo, Illinois v. Utilities Plus,*
No. CIV 05-2689 ADM/JJG, 2007 WL 1027294
(D. Minn. Apr. 3, 2007)......................................................53

*Currier v. Potter,*
379 F.3d 716 (9th Cir. 2004) ................................................19

*Dobrovolny v. Moore,*
126 F.3d 1111 (8th Cir. 1997) ...............................................40

*Doe v. Small,*
964 F.2d 611 (7th Cir. 1992).................................................23

*Elbert v. Carter,*
903 F.3d 779 (8th Cir. 2018) ................................................58

*Flemming v. Nestor,*
363 U.S. 603 (1960)...........................................................37

Appellate Case: 21-3079     Page: 7     Date Filed: 04/04/2022 Entry ID: 5143291

*Town of Greece v. Galloway,*
572 U.S. 565, 589 (2014) .................................................. 36

*Grant v. City of Blytheville,*
   841 F.3d 767 (8th Cir. 2016) ...................................... 42

*Hill v. Colorado,*
   530 U.S. 703 (2000) ................................................ 22

*Hillesheim v. Myron's Cards & Gifts, Inc.,*
   897 F.3d 953 (8th Cir. 2018) ...................................32

*Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Assoc.,*
   110 F.3d 547 (8th Cir. 1997) ...................................... 42

*Hutchinson v. Proxmire,*
   443 U.S. 111 (1979) ................................................ 27

*Impact Energy Res., LLC v. Salazar,*
   693 F.3d 1239 (10th Cir. 2012) .................................. 28

*Kmak v. Am. Century Cos.,*
   873 F.3d 1030 (8th Cir. 2017) ............................... 30, 32

*Knights of Columbus, Council No. 94 v. Town of Lexington,*
   272 F.3d 25 (1st Cir. 2001) .............................. 18, 19, 24

*Krantz v. City of Fort Smith,*
   160 F.3d 1214 (8th Cir. 1998) ............................... 22, 23

*Lane v. Peterson,*
   899 F.2d 737 (8th Cir. 1990) ...................................... 58

*Lubavitch Chabad House, Inc. v. City of Chicago,*
   917 F.2d 341 (7th Cir. 1990) ...................................19

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
   485 U.S. 439 (1988) ...............................................19

vi

*Make the Road by Walking, Inc. v. Turner,*
    378 F.3d 133 (2d Cir. 2004) ...........................................................19

*Meyer v. U.S. Bank Nat. Ass'n,*
    792 F.3d 923 (8th Cir. 2015) ........................................................ 61

*Miller v. Redwood Toxicology Lab., Inc.,*
    688 F.3d 928 (8th Cir. 2012) ....................................................27, 37

*New Doe Child #1 v. United States,*
    901 F.3d 1015 (8th Cir. 2018) ................................................... 17, 36

*Nuevos Destinos, LLC v. Peck,*
    999 F.3d 641 (8th Cir. 2021) ........................................................ 30

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979) .....................................................................57

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
    460 U.S. 37 (1983) ..................................................................19, 51

*Plymouth Foam Prod., Inc. v. City of Becker,*
    120 F.3d 153 (8th Cir. 1997) ........................................................53

*Schmidt v. Des Moines Pub. Sch.,*
    655 F.3d 811 (8th Cir. 2011) ..................................................... 24, 38

*Sons of Confederate Veterans, Virginia Division v. City of Lexington,
    Virginia,*
    722 F.3d 224 (4th Cir. 2013) ..............................................19, 22, 24

*Taylor v. City of Gary,*
    233 F. App'x 561 (7th Cir. 2007) (unpublished) ........................................18

*Torgerson v. City of Rochester,*
    643 F.3d 1031 (8th Cir. 2011) (en banc) ........................................ 41

*Transcontinental Ins. Co. v. W.G. Samuels Co.,*
    370 F.3d 755 (8th Cir. 2004) ...................................................... 46

Appellate Case: 21-3079    Page: 9    Date Filed: 04/04/2022 Entry ID: 5143291

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017) ................................................................. 17

*Trudeau v. Fed. Trade Comm'n*,
384 F. Supp. 2d 281 (D.D.C. 2005) .......................................... 28

*United States v. Bjerke*,
796 F.2d 643 (3d Cir. 1986) ....................................................... 19

*Walser v. Toyota Motor Sales, U.S.A., Inc.*,
43 F.3d 396 (8th Cir. 1994) ........................................................ 43

*Washington v. Davis*,
426 U.S. 229 (1976) ............................................................. 25, 38

*Willhite v. Collins*,
459 F.3d 866 (8th Cir. 2006) ..................................................... 61

**State Cases**

*Cohen v. Cowles Media Co.*,
479 N.W.2d 387 (Minn. 1992) .................................................. 54

*Faimon v. Winona State University*,
540 N.W.2d 879 (Minn. Ct. App. 1995) ................................ 53, 54

*Hous. & Redevelopment Auth. of Chisholm v. Norman*,
696 N.W.2d 329 (Minn. 2005) .................................................. 42

*Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*,
848 N.W.2d 539 (Minn. 2014) .................................................. 44

*Meriwether Minn. Land & Timber, LLC v. State*,
818 N.W.2d 557 (Minn. Ct. App. 2012) ................................ 46, 47

*Ruud v. Great Plains Supply, Inc.*,
526 N.W.2d 369 (Minn. 1995) ............................................. 42, 50

*Schatz v. Interfaith Care Ctr.*,
811 N.W.2d 643 (Minn. 2012) .................................................. 40

Appellate Case: 21-3079    Page: 10    Date Filed: 04/04/2022 Entry ID: 5143291

*Snyder v. City of Minneapolis,*
441 N.W. 2d 781 (Minn. 1989)....................................................................... 47

**Federal Statutes**

42 United States Code § 2000cc–5(5) ........................................................... 29

**State Statutes**

Minnesota Statutes § 412.201........................................................................53

**Other Authorities**

Restatement (Second) of Contracts § 2 ......................................................... 44

Restatement (Second) of Contracts § 77, cmt. a, illus. 2 (1981) .................... 44

Restatement (Second) of Contracts § 90 (1981) ............................................. 43

Appellate Case: 21-3079    Page: 11    Date Filed: 04/04/2022 Entry ID: 5143291

## STATEMENT OF THE CASE

### A.    Procedural overview

In April 2019, the Satanic Temple filed its complaint, alleging ten claims: (1) Violation of Free Exercise Clause; (2) Violation of Free Speech; (3) Violation of Equal Protection; (4) Violation of Contract Clause; (5) Violation of Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA); (6) Breach of Contract; (7) Promissory Estoppel; (8) Minnesota Constitution—Impairment of Contract; (9) Minnesota Constitution—Free Exercise of Religion; and (10) Minnesota Constitution—Freedom of Speech.[1]

In December 2019, the Temple moved for judgment on the pleadings as to Count II,[2] and Belle Plaine moved for judgment on the pleadings as to the entire complaint.[3] The district court denied the Temple's motion, granted in

---

[1] App. 10–24; R.Doc. 1 ¶¶ 46–134. All "App." or "A" citations are to the Temple's Appendix or Addendum, respectively. Citations to Belle Plaine's appendix are denoted by "CityApp_" and refer to documents filed in *Satanic Temple v. City of Belle Plaine,* No. 19-cv-0112. Any CityApp_ record citations from the Temple's second lawsuit, No. 21-cv-00336, are indicated by reference to "*Satanic Temple II.*"

[2] A1–23; R.Doc. 46.

[3] A1–23; R.Doc. 46.

Appellate Case: 21-3079    Page: 12    Date Filed: 04/04/2022 Entry ID: 5143291

part Belle Plaine's motion, and dismissed all claims except promissory estoppel.[4]

After discovery, Belle Plaine moved for summary judgment on the claim for promissory estoppel. The district court granted Belle Plaine's motion for summary judgment.[5]

Meanwhile, the Temple filed a second lawsuit based on the same underlying facts. Belle Plaine moved to dismiss, and the district court granted Belle Plaine's motion to dismiss.[6]

The Temple filed appeals in both cases, and this Court consolidated them.

**B.** **Without Belle Plaine's permission, the Veterans Club placed a soldier display in the City Park but later removed it.**

Belle Plaine owns Veterans Memorial Park ("City Park"). In 2016, the Belle Plaine Veterans Club placed a display of a soldier kneeling by a grave-marker cross in the City Park without Belle Plaine's permission. The Temple

---

[4] A1–23; R.Doc. 46.

[5] A55-102; R.Doc. 109.

[6] A55-102; R.Doc. 109.

Appellate Case: 21-3079    Page: 13    Date Filed: 04/04/2022 Entry ID: 5143291

concedes that Belle Plaine did not authorize the placement of the soldier display in 2016.[7] It was removed.[8]

## C. On February 6, 2017, Belle Plaine's Council considered, but did not vote to approve, a limited public forum policy.

On February 6, 2017, Belle Plaine's Council considered whether to establish a limited public forum in the City Park.[9] The Council asked its staff to prepare a draft policy for consideration at its next meeting.[10] The Temple incorrectly suggests that the Council adopted the policy at this meeting,[11] but that suggestion lacks support in the record.[12]

## D. Before the next Council meeting, the Temple planned its display.

On February 7, 2017, the Temple announced to news outlets that it was working "to construct a new Satanic display."[13] Before Belle Plaine's Council

---

[7] Temple's Principal Brief ("Br.") 20.

[8] App. 6, 40; R.Doc. 1 ¶ 28; R.Doc. 23 ¶ 3.

[9] CityApp_230, 234; R.Doc. 84-1 at 194, 198.

[10] CityApp_234; R.Doc. 84-1 at 198.

[11] Br. 22.

[12] *See, e.g.,* CityApp_235, 238-40; R.Doc. 84-1 at 199, 202–04; CityApp_279; R.Doc. 96-1 at 3.

[13] CityApp_027; R.Doc. 83 at 3 n.4 (citing Hemant Mehta, *MN Town Foolishly Votes To Re-Erect Christian War Memorial, So Atheists Will Ask For One, Too,* Friendly Atheist (Feb. 7, 2017), available at

Appellate Case: 21-3079    Page: 14    Date Filed: 04/04/2022 Entry ID: 5143291

voted on whether to establish a limited public forum, the Temple decided "to commission the construction of the veteran's memorial regardless of whichever way the MN vote goes."[14]

### E. Before it was aware of the outcome of the Council's vote, the Temple began designing and planning to construct the display.

On February 21, 2017, Belle Plaine's Council met to vote on the policy.[15] By mid-day on February 22, 2017—before the Temple was aware of the results of the Council's vote—the Temple was obtaining estimates to build the display.[16] For the Temple, the mere act of creating the display held value.[17] The

---

https://friendlyatheist.patheos.com/2017/02/07/mn-town-foolishly-votes-to-re-erect-christian-war-memorial-so-atheists-will-ask-for-one-too/).

[14] CityApp_141; R.Doc. 84-1 at 80 (11:11 p.m.). Any redactions appearing on CityApp_140–81, 184–90, 200–03, 208–20; R.Doc. 84-1 at 79–120, 128–34, 144–47 and 152–64 (Mills Decl. Exs. 9–18, 22, 25 and 28–32) reflect communications and documents to, from, or involving Lucien Greaves. CityApp_056-57; R.Doc. 84 ¶ 3. The person referred to as Lucien Greaves, which is a pseudonym, also uses another pseudonym. *See* CityApp_065; R.Doc. 84-1 at 4 (L. Greaves Tr. 7:1–3); CityApp_120; R.Doc. 84-1 at 59 (TST Tr. 114:18–115:18); CityApp_223; R.Doc 84-1 at 187 (citing to the disclosures exhibit).

[15] CityApp_234–35; R.Doc. at 84-1 at 198–99.

[16] CityApp_112; R.Doc. 84-1 at 51 (TST Tr. 56:2–12); CityApp_088; R.Doc. 84-1 at 27 (M. Jarry Tr. 56:20–57:7); CityApp_141–42; R.Doc. 84-1 at 80–81.

[17] CityApp_086–87; R.Doc. 84-1 at 25–26 (M. Jarry Tr: 48:16–20, 49:5–10, 50:13–51:4, 51:17–23, 52:3–14, 53:4–12); CityApp_142; R.Doc. 84-1 at 81 (12:46 p.m.).

4

Temple considered the display to be "more than a statue,"[18] and more akin to "a piece of history."[19] The Temple "was interested in commissioning the construction of the cube display regardless of the outcome of the vote."[20]

## F. On February 21, 2017, Belle Plaine established a limited public forum policy.

Belle Plaine Resolution 17-020, dated February 21, 2017 ("Enacting Resolution"), established a limited public forum in the City Park. The policy stated that Belle Plaine designates "a limited public forum" in the City Park "for the express purpose of allowing individuals or organizations to erect and maintain privately owned displays that honor and memorialize living or deceased veterans[.]"[21] The resolution also stated that no display may be installed without first obtaining a permit, that the party requesting a permit is responsible for erecting the display upon approval of a permit, and that the requesting party and not Belle Plaine shall own any display erected in the

---

[18] CityApp_171; R.Doc. 84-1 at 110 (2:22 p.m.); CityApp_096; R.Doc. 84-1 at 35 (M. Jarry Tr. 94:6–95:5).

[19] CityApp_141; R.Doc. 84-1 at 80 (11:11 p.m.).

[20] CityApp_086; R.Doc. 84-1 at 25 (M. Jarry Tr. 49:11–15); CityApp_141–43; R.Doc. 84-1 at 80–82.

[21] CityApp_238; R.Doc. 84-1 at 202 ¶ 1; *see also* App. 28–30; R.Doc. 1-1 at 1–3.

Appellate Case: 21-3079    Page: 16    Date Filed: 04/04/2022 Entry ID: 5143291

limited public forum.[22] The resolution required that displays must be removed within one year from the date of approval of a permit.[23] The resolution specifically stated that, "[i]n the event the City desires to close the limited public forum or rescind this policy, the City . . . may terminate all permits by giving ten (10) days' written notice."[24] Belle Plaine established a permit application form consistent with the resolution.[25]

## G. Reason Alliance Ltd. applied for a permit under the limited public forum policy.

Reason Alliance Ltd. applied for a permit under the Enacting Resolution.[26] The application—signed by a director of the Temple—affirmed

---

[22] *See generally* CityApp_238-40; R.Doc. 84-1 at 202–04.

[23] CityApp_239; R.Doc. 84-1 at 203 ¶ 7.

[24] CityApp_240; R.Doc. 84-1 at 204 ¶ 13.

[25] CityApp_242–44; R.Doc. 84-1 at 206–08.

[26] App. 31–34; R.Doc. 1-1 at 4–7; App. 7; R. Doc. 1, ¶ 29.

6

that the applicant would comply with Belle Plaine's limited-public-forum policy.[27] Reason Alliance Ltd. and the Temple share the same two directors.[28]

## H. Before Belle Plaine approved a permit, the Temple's directors understood that the display might be in City Park for only one year and that it may be required to be removed at any time.

Belle Plaine's limited public forum policy was clear: Belle Plaine could require all displays to be removed at any time, and each display would only be authorized for *up to* one year.[29] The Temple understood this policy.[30] The Temple knew that Belle Plaine could terminate a permit on 10 days' written notice,[31] and that the policy did not place any limits on Belle Plaine's authority

---

[27] CityApp_129-32; R.Doc. 84-1 at 68-71; CityApp_068-69; R.Doc. 84-1 at 7–8 (L. Greaves Tr. 44:9–45:12, 46:1–8); CityApp_084; R.Doc. 84-1 at 23 (M. Jarry Tr. 30:10–22); CityApp_107, 109; R.Doc. 84-1 at 46, 48 (TST Tr. 18:18–19:5, 32:22–33:9).

[28] CityApp_104; R.Doc. 84-1 at 43 (TST Tr. 9:18–23); *see also id.* (TST Tr. 9:5–9)

[29] CityApp_239-40; R.Doc. 84-1 at 203–04 (¶¶ 7, 13).

[30] CityApp_147; R.Doc. 84-1 at 86 (6:03 p.m.); *see also* CityApp_117-118; R.Doc. 84-1 at 56–57 (TST Tr. 97:21–98:8 (discussing same email)); CityApp_072; R.Doc. 84-1 at 11 (L. Greaves Tr. 104:18–105:17 (discussing CityApp_147-48; R.Doc. 84-1 at 86–87)); CityApp_090, 092; R.Doc. 84-1 at 29, 31 (M. Jarry Tr. 67:13–69:15, 74:14–75:19); CityApp_067-68; R.Doc. 84-1 at 6–7 (L. Greaves Tr. 41:14–23, 45:7–25).

[31] CityApp_068; R.Doc. 84-1 at 7 (L. Greaves Tr. 42:3–8).

7

to terminate a permit.[32] The Temple did not—and could not—expect that a permit would entitle it to leave the display up for an entire year. Instead, the Temple expected that after the display was eventually removed—either after one year or by operation of Belle Plaine's notice—the Temple could bring the display to Salem, Massachusetts, or sell it.[33]

## I.     On March 29, 2017, Belle Plaine granted two permits: one to Reason Alliance Ltd. and another to the Veterans Club.

Belle Plaine approved the application from Reason Alliance Ltd. on March 29, 2017, notifying that Belle Plaine approved the permit to place a display within the limited public forum in City Park.[34] The permit stated that "[t]his permit is good for one year from the date of this letter."[35] The Temple understood it was a "plausible outcome" that Belle Plaine would order the display removed before the one-year time limit expired.[36]

---

[32] CityApp_068; R.Doc. 84-1 at 7 (L. Greaves Tr. 42:24–43:14); *see also id.* CityApp_082–83; R.Doc. 84-1 at 21–22 (M. Jarry Tr. 21:6–10, 28:10–29:9).

[33] CityApp_092; R.Doc. 84-1 at 31 (M. Jarry Tr. 74:14–75:22 (discussing CityApp_149; R.Doc. 84-1 at 88 (3:57 a.m.))).

[34] App. 31–34; R.Doc. 1-1 at 4–7.

[35] App. 31; R.Doc. 1-1 at 4.

[36] CityApp_116; R.Doc. 84-1 at 55 (TST Tr. 92:21–93:15).

Appellate Case: 21-3079     Page: 19     Date Filed: 04/04/2022 Entry ID: 5143291

The Veterans Club also received a permit to place a display in the limited public forum in City Park.[37] The Veterans Club placed its soldier display in the limited public forum in City Park in April 2017.[38]

In sum, Belle Plaine issued two permits under the Enacting Resolution: one to the Temple,[39] and another to the Veterans Club.[40]

**J.    The Temple was more interested in showcasing the display in its gallery, where it could charge admission fees to see it, than placing it in City Park, where no admission fees could be charged.**

The Temple did not install its display in the City Park during the months following the permit approval.[41] Although the construction of the display was complete as of June 23, 2017,[42] the Temple did not install the display in the City Park.[43] This is because the Temple had no plans to place the display in

---

[37] *See* App. 6–7; R.Doc. 1 ¶ 28.

[38] *Id*.

[39] App. 7; R.Doc. 1 ¶ 29.

[40] App. 6–7; R.Doc. 1 ¶ 28.

[41] *See* CityApp_119; R.Doc. 84-1 at 58 (TST Tr. 102:7–24); CityApp_195–96; R.Doc. 84-1 at 139–40.

[42] CityApp_118; R.Doc. 84-1 at 57 (TST Tr. 98:20–99:17); CityApp_175; R.Doc. 84-1 at 114.

[43] *See* CityApp_119; R.Doc. 84-1 at 58 (TST Tr. 102:7–24); CityApp_195–99; R.Doc. 84-1 at 139–43.

Appellate Case: 21-3079    Page: 20    Date Filed: 04/04/2022 Entry ID: 5143291

the City Park before the week of August 7–13, 2017.[44] Instead, the Temple's priority was to place it in the Salem Art Gallery.[45]

The Salem Art Gallery is owned by the Temple's two directors and shares a building with the Temple's headquarters.[46] The Temple's directors were motivated to place the display in the Salem Art Gallery.[47] The Temple believed that the display could draw crowds and generate money.[48] Unlike at the City Park, the Temple could charge the public a $12 admission fee to the Salem Art

---

[44] CityApp_119; R.Doc. 84-1 at 58 (TST Tr. 102:7–24); CityApp_195–96; R.Doc. 84-1 at 139–40.

[45] CityApp_175; R.Doc. 84-1 at 114 ; CityApp_201; R.Doc. 84-1 at 145 (2:57 p.m.); *id*. (1:00 p.m.).

[46] CityApp_104-05; R.Doc. 84-1 at 43–44 (TST Tr. 8:3–15, 11:8–12:3); CityApp_097; R.Doc. 84-1 at 36 (M. Jarry Tr. 133:9–11).

[47] *See, e.g.*, CityApp_201; R.Doc. 84-1 at 145 (1:00 p.m.); *id.* at 2:57 p.m.

[48] *See* CityApp_074-76; R.Doc. 84-1 at 13–15 (L. Greaves Tr. 134:4–20 (gallery charges admission at $12.00 per person)), 141:15–19, 142:1–143:9, 143:18–144:1); CityApp_097–98; R.Doc. 84-1 at 36–37 (M. Jarry Tr. 133:9–134:4); CityApp_107; R.Doc. 84-1 at 46 (TST Tr. 20:22–21:5); *see also* CityApp_180; R.Doc. 84-1 at 119 (4:55 p.m. ("I'd like to get it [to Salem Art Gallery] ASAP while the news is still hot.")).

Gallery.[49] The display has been exhibited at the Salem Art Gallery since approximately July 2017.[50]

## K.    Belle Plaine ended the limited public forum policy.

On July 17, 2017, Belle Plaine's Council unanimously enacted Resolution 17-090 ("Rescinding Resolution"), which stated that "the City Council has determined that allowing privately-owned memorials or displays in its Park no longer meets the intent or purpose of the Park."[51] The Rescinding Resolution further stated that "the City Council has also determined that the continuation of the limited public forum may encourage vandalism in the Park, reduce the safety, serenity, and decorum of the Park, unnecessarily burden City staff and law enforcement, and negatively impact the public's health, safety, and welfare."[52] The Rescinding Resolution declared that "[t]he policy established in Resolution 17-020 is rescinded," and that "the limited

---

[49] CityApp_073-74; R.Doc. 84-1 at 12–13 (L. Greaves Tr. 133:16–134:20).

[50] CityApp_066; R.Doc. 84-1 at 5 (L. Greaves Tr. 32:9–19); *see* CityApp_107; R.Doc. 84-1 at 46 (TST Tr. 20:22–21:12).

[51] App. 37; R.Doc. 1-1 at 10. Belle Plaine gave the Temple advance notice of this meeting. App. 339.

[52] App. 37; R.Doc. 1-1 at 10.

public forum established in the Park is hereby eliminated."[53] Belle Plaine thus terminated all permits issued under the policy.

On July 18, 2017, Belle Plaine sent a letter to the Temple notifying that the City Council had adopted the Rescinding Resolution eliminating the limited public forum in the City Park.[54] The letter enclosed a check in the amount of $100 to fully reimburse Reason Alliance Ltd. (or the Temple) for its permit-application fee.

The Veterans Club voluntarily removed its display in July 2017.[55]

---

[53] App. 37; R.Doc. 1-1 at 10.

[54] App. 38; R.Doc. 1-1 at 11; *see also* CityApp_247–48; R.Doc. 86-1 at 2–3.

[55] App. 8; R.Doc. 1 ¶ 32.

Appellate Case: 21-3079    Page: 23    Date Filed: 04/04/2022 Entry ID: 5143291

**L.** **The Temple collected more money from promoting and exhibiting the display than it paid to have the display made.**

The Temple paid the artist who designed the display $1,000.[56] The Temple paid the fabricator who constructed the display $3,600.[57] The Temple paid $4,000 to its own director for "overseeing" the development of the display.[58] The director submitted an invoice for his work three days after Belle Plaine approved the permit.[59] In total, the Temple spent $8,600 on its display.

---

[56] CityApp_115; R.Doc. 84-1 at 54 (TST Tr. 77:2–7); CityApp_219; R.Doc. 84-1 at 163. The Temple testified that it paid $4,000 to the designer of the display. CityApp_115; R.Doc. 84-1 at 54 (TST Tr. 76:1–20); *see also* CityApp_215, 217; R.Doc. 84-1 at 159, 161. But that testimony was based on two invoices for $2,000 that had the recipient's identity redacted. *Id.* After the deposition, the Temple produced the unredacted versions of those invoices, which show the recipient of the two $2,000 payments was the Temple's director Lucien Greaves. CityApp_256-57; R.Doc. 88-1 at 2–3.

[57] CityApp_113-14; R.Doc. 84-1 at 52–53 (TST Tr. 63:21–66:1); CityApp_205, 207; R.Doc. 84-1 at 149, 151; *see also* CityApp_096; R.Doc. 84-1 at 35 (M. Jarry Tr. 96:19–97:9); CityApp_173; R.Doc. 84-1 at 112. The fabricator donated 75 hours of his time. *Id*. The fabricator believed the replacement value of the display was about $5,000. *Id*.

[58] CityApp_093; R.Doc. 84-1 at 32 (M. Jarry Tr. 80:2–19); CityApp_154; R.Doc.84-1 at 93; *see also* CityApp_094; R.Doc. 84-1 at 33 (M. Jarry Tr. 82:19–25); CityApp_112; R.Doc. 84-1 at 51 (TST Tr. 56:17–57:23); CityApp_256-57; R.Doc. 88-1 at 2–3. The Temple conceded it did not claim insurance as damages. CityApp_110; R.Doc. 84-1 at 49 (TST Tr. 40:16–20).

[59] CityApp_154; R.Doc. 84-1 at 93.

Appellate Case: 21-3079    Page: 24    Date Filed: 04/04/2022 Entry ID: 5143291

The Temple more than recouped what money it spent on the display by fundraising and showcasing the display at the Salem Art Gallery. Through its fundraising, the Temple raised $12,673.[60] By charging admission for entry into the Gallery, the Temple collected $182,000.[61]

## SUMMARY OF LEGAL ARGUMENT

Belle Plaine had the right to close the limited public forum. The Temple did not place its display in the City Park while the opportunity existed—unlike the Veterans Club, which received the other permit. Belle Plaine did not control the timing of when the Temple wished to place its display. Nothing requires Belle Plaine to hold open a limited public forum indefinitely.

Belle Plaine's Rescinding Resolution closed the limited public forum for all. The closure was viewpoint-neutral, nondiscriminatory, and applied to everyone. The Rescinding Resolution did not violate the free-speech clause, the free-exercise clause, or the equal-protection clause of the Constitution. Nor did it violate RLUIPA. The permit Belle Plaine granted did not constitute

---

[60] CityApp_108-09; R.Doc. 84-1 at 47–48 (TST Tr. 26:19–22, 30:19–31:10).

[61] CityApp_107; R.Doc. 84-1 at 46 (TST Tr. 20:22–21:12); CityApp_074; R.Doc. 84-1 at 13 (L. Greaves Tr. 134:4–16); CityApp_097; R.Doc. 84-1 at 36 (M. Jarry Tr. 133:9–17).

14

a promise that must be enforced to avoid injustice under the doctrine of promissory estoppel. The district court correctly ruled in Belle Plaine's favor on all claims.

The district court also correctly dismissed the second lawsuit that the Temple filed later based on the same two resolutions and the same permit. This Court should affirm.

## LEGAL ARGUMENT

## I.     The district court properly dismissed the Temple's constitutional claims.

The district court properly dismissed all the Temple's constitutional claims. The Temple's original complaint included claims for (1) Violation of Free Exercise Clauses of both the United States Constitution and the Minnesota Constitution, (2) Violation of Free Speech Clauses of both the United States Constitution and the Minnesota Constitution; and (3) Violation of the Equal Protection Clause of the United States Constitution.[62] None of those claims stated plausible claims for relief.

---

[62] A4–5; R.Doc. 46 at 4–5.

Appellate Case: 21-3079     Page: 26     Date Filed: 04/04/2022 Entry ID: 5143291

## A. The free-exercise claims were defective.

The district court correctly dismissed the Temple's free-exercise claims because it failed to plausibly allege that Belle Plaine's closure of the limited public forum placed a substantial burden on the Temple's religious practices.[63] The complaint failed to allege any constraint on either conduct or expression of a central tenet of the Temple's religious beliefs.[64] The complaint failed to demonstrate that Rescinding Resolution prevented the Temple from expressing adherence to its faith.[65] The complaint failed to explain how Rescinding Resolution burdens the exercise of the Temple's religious practice.[66] The complaint did not allege that Rescinding Resolution required the Temple to change its religious philosophy or conduct.[67] Nor did the complaint explain how Rescinding Resolution required the Temple to act in a manner inconsistent with its religious beliefs.[68]

---

[63] A8–11; R.Doc. 46 at 8–11.

[64] A8–9; R.Doc. 46 at 8–9.

[65] A9; R.Doc. 46 at 9.

[66] A9–10; R.Doc. 46 at 9–10.

[67] A10; R.Doc. 46 at 10.

[68] A10; R.Doc. 46 at 10.

16

Both the Enacting Resolution and the Rescinding Resolution are neutral and generally applicable without regard to religion—that is, *all* permit applicants were subject to the requirements of the Enacting Resolution, and the Rescinding Resolution excludes *all* private displays.[69] "In recent years, when [the Supreme Court] has rejected free exercise clause challenges, the laws in question have been neutral and generally applicable without regard to religion." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2020 (2017); *see New Doe Child #1 v. United States*, 901 F.3d 1015, 1025 (8th Cir. 2018) ("The Free Exercise Clause requires only that the statutes at issue be neutral and generally applicable; incidental burdens on religion are usually not enough to make out a free exercise claim.") (citation omitted). The Temple failed to identify any text of the Rescinding Resolution targeting the Temple's religious practices while exempting others' religious practices. When Belle Plaine closed the limited public forum, the closure applied equally to all. The Rescinding Resolution is neutral and generally applicable. *See New Doe Child #1*, 901 F.3d at 1025 (holding that because the statutes at issue were neutral

---

[69] A16; R.Doc. 46 at 16 ("[T]he resolution applies equally to all entities that sought to erect a display in [City] Park.").

and generally applicable, "the Plaintiffs fail to state a claim under the Free Exercise Clause" (citations omitted)); *Knights of Columbus, Council No. 94 v. Town of Lexington*, 272 F.3d 25, 35 (1st Cir. 2001) (no free-exercise violation because "the regulation does not discriminate against a particular religion or religious practice").

The Temple incorrectly states that the district court held that "the complaint did not plausibly allege that the Display was religious."[70] But that is not what the district court held. The legal defects in the free-exercise claims are that the Rescinding Resolution does not preclude the Temple from exercising any central tenet of its religious beliefs; it does not prevent the Temple from expressing adherence to its faith; and it does not prohibit any activity that is fundamental to the Temple's religion.[71]

The First Amendment does not include a constitutional right to use public property as a place of worship or to erect a private structure on public property. *See Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007) (unpublished) (citing *Prater v. City of Burnside*, 289 F.3d 417, 427–28 (6th Cir.

---

[70] Br. 46.

[71] A9; R.Doc. 46 at 9.

18

2002)); *Knights of Columbus*, 272 F.3d at 33 (citing *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 783 (1995)); *Am. Jewish Cong. v. City of Beverly Hills*, 90 F.3d 379, 384 (9th Cir. 1996) ("The City constitutionally could ban all unattended private displays in its parks.") (citing *Capitol Square*, 515 U.S. at 783 (Souter, J. concurring)); *Lubavitch Chabad House, Inc. v. City of Chicago*, 917 F.2d 341, 347 (7th Cir. 1990). The "Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) (citation and internal quotation marks omitted).

Also, the government is permitted to close a limited public forum. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Sons of Confederate Veterans, Virginia Division v. City of Lexington, Virginia*, 722 F.3d 224, 232 (4th Cir. 2013) ("A government is entitled to close a designated public forum to all speech."); *Currier v. Potter*, 379 F.3d 716, 728 (9th Cir. 2004) (government may close limited public forum "whenever it wants"); *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004) (government may decide to close limited public forum); *United States v.*

19

*Bjerke*, 796 F.2d 643, 647 (3d Cir. 1986) (officials may choose to close limited public forum at any time).

The Temple's "hybrid-rights" argument fails.[72] The Rescinding Resolution does not target the Temple's religious practices while exempting others. The Rescinding Resolution does not compel affirmation of religious belief, punish the expression of religious doctrines, or lend its power to one side or the other in controversies over religious authority. The Rescinding Resolution does not burden the Temple's religiously motivated speech. The Temple held a permit for the same amount of time as the Veterans Club. Beyond that permitted time, the placement of the soldier display in the City Park was not authorized by Belle Plaine. The Temple even concedes that the other time was unauthorized.[73] Thus, contrary to the Temple's suggestion, Belle Plaine did not confer more permitted time in the City Park to the Veterans Club than the Temple.

_____

[72] Br. 48–49.

[73] Br. 20.

Appellate Case: 21-3079   Page: 31   Date Filed: 04/04/2022 Entry ID: 5143291

### B. The free-speech claims were defective.

It is undisputed that Belle Plaine created a limited public forum in City Park.[74] The district court correctly determined that, even if the Temple had a First Amendment right to speak while the limited public forum was open, Belle Plaine's decision to close the limited public forum does not give rise to a First Amendment claim. The district court appropriately dismissed the free-speech claim because the Temple alleged "no facts demonstrating that [the Rescinding Resolution] did not apply equally to all entities seeking to erect a display or that [the Temple] was the only organization excluded from displaying a monument in [City] Park."[75] The complaint failed to identify how the Rescinding Resolution was unreasonable or discriminatory. The complaint failed to allege facts demonstrating that the Rescinding Resolution did not apply equally to all entities seeking to erect a display. The Temple did not plausibly allege that Belle Plaine closed the limited public forum in a viewpoint discriminatory manner—to the contrary, Belle Plaine closed the limited public forum entirely.

---

[74] Br. 39 ("City created a limited public forum").

[75] A13; R.Doc. 46 at 13.

Appellate Case: 21-3079    Page: 32    Date Filed: 04/04/2022 Entry ID: 5143291

The Rescinding Resolution prohibited all private displays in the public park, regardless of message or messenger. *See Sons of Confederate Veterans*, 722 F.3d at 231–32 ("... the City did not exclude either a specific speaker or a specific class of speech, but closed a designated public forum by disallowing all private expression from its flag standards.... In other words, it appears that the City experimented with private speakers displaying flags on the City's standards, and that effort turned out to be troublesome. It was entitled, under the controlling principles, to alter that policy."). "[T]he City was entitled to listen to the public and to enact ordinances that are constitutional in text and in operation, and that are supported by the electorate." *Id*. "[T]he contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support." *Hill v. Colorado*, 530 U.S. 703, 724 (2000).

The Temple inaptly relies on *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1222 (8th Cir. 1998). That case did not involve the closing of a limited public forum to all. Rather, *Krantz* involved the public-forum doctrine. *Id*. at 1218–

22

19.[76] *Krantz* determined that ordinances prohibiting plaintiffs from placing handbills under windshield wipers of unattended vehicles parked on public property were unconstitutional because they were facially overbroad restrictions on free speech. *Id.* at 1222. Here, the Temple was not prohibited from placing handbills. This case is about private structures on public land—which the Temple concedes is an impermissible form of speech.[77] Belle Plaine closed the limited public forum entirely. The Rescinding Resolution applies equally to all. Further, the closing was not merely about vandalism, as the Temple suggests. That suggestion overlooks the Rescinding Resolution itself, which stated that closing the forum was done to protect the "safety, serenity, and decorum" of the Park, preserve staff and law-enforcement resources, and protect the "public's health, safety, and welfare."[78]

---

[76] Another case the Temple cites, *Doe v. Small*, 964 F.2d 611, 620 (7th Cir. 1992), likewise applied the public-forum doctrine.

[77] Br. 39 ("City created a limited public forum by opening its Park to an otherwise impermissible form of speech (private structures)..."). Private structures may be prohibited because "the government need not permit all forms of speech on property it owns and controls." *Ball v. City of Lincoln*, 870 F.3d 722, 729 (8th Cir. 2017) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992)).

[78] App. 37; R.Doc. 1-1 at 10.

Appellate Case: 21-3079    Page: 34    Date Filed: 04/04/2022 Entry ID: 5143291

Belle Plaine closed a limited public forum by disallowing all private monuments in the City Park. Belle Plaine was not required to indefinitely retain the open character of a limited public forum. *Sons of Confederate Veterans*, 722 F.3d at 231 (citations omitted). There is no constitutional right to erect a private structure on public property, and a total ban on unattended structures in a public park is both content-neutral and narrowly tailored to achieve a substantial governmental interest. *Knights of Columbus*, 272 F.3d at 33 (citing *Capitol Square*, 515 U.S. 753 (internal citations omitted)).

### C. The equal-protection claim was defective.

The district court rightly dismissed the equal-protection claim because it failed to plausibly allege that the Temple and Belle Plaine Veterans Club were similarly situated, that the Temple is part of a suspect class, or that the Rescinding Resolution is either discriminatory on its face or has both a discriminatory purpose and discriminatory impact.[79] To state an equal-protection claim, a complaint must allege that the plaintiff was "treated differently than other persons who were in all relevant respects similarly situated." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 820 (8th Cir. 2011)

---

[79] A15–16; R.Doc. 46 at 15–16.

24

(internal quotation marks omitted). The district court correctly determined that the complaint failed to allege any dissimilar treatment relative to similarly situated parties.[80] The Temple and the Belle Plaine Veterans Club were not similarly situated.[81] "The fact that the Belle Plaine Veterans Club erected its display earlier than [the Temple] is not alleged to have been in Belle Plaine's control."[82] Also, the Temple admits that the 2016 placement of the soldier display in the City Park was not authorized by Belle Plaine.[83] The district court accurately observed that the Rescinding Resolution "applies equally to all entities that sought to erect a display in [City] Park."[84] Thus, the claim fails because a plaintiff must allege that the challenged law or government action either is discriminatory on its face or has both a discriminatory purpose and discriminatory impact. *Washington v. Davis*, 426 U.S. 229, 240–42 (1976).

Further, the Temple has not identified any classifications—suspect or otherwise—created by the Rescinding Resolution. Nevertheless, the text of

---

[80] A15; R.Doc. 46 at 15.

[81] A15; R.Doc. 46 at 15.

[82] A16; R.Doc. 46 at 16.

[83] Br. 20.

[84] A16; R.Doc. 46 at 16.

Appellate Case: 21-3079    Page: 36    Date Filed: 04/04/2022   Entry ID: 5143291

the Rescinding Resolution provides a plethora of rational bases for excluding all private displays from the City Park—including determinations "that allowing privately-owned memorials or displays in its Park no longer meets the intent or purpose of the Park" and "that the continuation of the limited public forum may encourage vandalism in the Park, reduce safety, serenity, and decorum of the Park, unnecessarily burden City staff and law enforcement, and negatively impact the public's health, safety and welfare."[85]

Multiple times in its arguments, the Temple points to an "off-the-record" meeting on July 10, 2017. The allegation is based on a June 30, 2017 email.[86] The Temple's counsel questioned Belle Plaine about this supposed secret meeting and discovered from sworn testimony that the City Council did

---

[85] App. 37; R.Doc. 1-1 at 10.

[86] Plaintiff alleges a July 10, 2017 meeting based on a June 30 email. App. 392; R.Doc. 1 (*Satanic Temple II*) ¶ 191 (citing App. 532; R.Doc. 1-2 (*Satanic Temple II*) at 11). That email merely suggests a possible meeting, it does not say such a meeting happened. Plaintiff also cites Complaint Exhibit 2 for evidence of an "off-the-record meeting with the Veterans Group," App. 589–90; R.Doc. 23 (*Satanic Temple II*) at 19–20, but that refers to a closed-session meeting of the City Council on January 3, 2017, before the Enacting Resolution even existed. App. 424; R.Doc. 1-1 (*Satanic Temple II*) at 7.

26

not have any meeting on or about July 10, 2017.[87] Given this testimony, this Court should ask the Temple's counsel what evidentiary support exists in the record for the allegation of an "off-the-record" meeting. In any event, the allegation is immaterial as a matter of law. "There must be a limit to individual argument in such matters if government is to go on," and "no one would suggest that the 14th Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body entrusted by the state Constitution with the power." *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).

The Temple also cites a press release. But a press release does not constitute the actual government action here. *See Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) (press releases "are primarily means of informing those outside the legislative forum"); *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016) ("An action can constitute official municipal policy only if

---

[87] CityApp_286–87; R.Doc. 104 at 5–6 (Meyer Dep. 16:20–18:2). "[C]ourts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the Rule 12 motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quotation omitted).

Appellate Case: 21-3079    Page: 38    Date Filed: 04/04/2022 Entry ID: 5143291

the decisionmaker in question possesses final authority to establish municipal policy with respect to the action ordered."). While a press release may accompany a government agency action, it "is unheard of" to claim that the press release itself constitutes the "legally operative, formal decision for purposes of judicial review." *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1264 (10th Cir. 2012); *see also Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 289 (D.D.C. 2005) (press release was not final government action). The Temple cites no authority for the notion that a press release is the operative government decision. This Court must focus on the actual government decision reflected in the language of the Rescinding Resolution, which is viewpoint- and content-neutral, and applies equally to all.

## II.     The district court properly dismissed the Temple's claim under the Religious Land Use and Institutionalized Persons Act of 2000.

The district court properly dismissed the RLUIPA claim because the Rescinding Resolution is not a "land use regulation" as defined by the statute and the Temple did not have a protectable property interest.[88] The statute defines a "land use regulation" claimant as one who "has an ownership,

---

[88] A18–19; R.Doc. 46 at 18–19.

Appellate Case: 21-3079     Page: 39     Date Filed: 04/04/2022 Entry ID: 5143291

leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such interest." 42 U.S.C. § 2000cc–5(5). The district court accurately recognized that a government entity implements a land use regulation "only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest."[89] The district court correctly determined that "the complaint does not identify any zoning or landmarking law under which Belle Plaine acted[.]"[90] Also, the district court correctly determined that the Temple alleged "no facts that plausibly claim its one-year revocable permit created an easement."[91] *Id.* The permit did not create an easement under Minnesota law.[92] No error exists here.

_____

[89] A17; R.Doc. 46 at 17 (quoting *Prater*, 289 F.3d at 434 (6th Cir. 2002)).

[90] A19; R.Doc. 46 at 19.

[91] A18; R.Doc. 46 at 18.

[92] *See* CityApp_013-14; R.Doc. 40 at 13–14; CityApp_021-22 (discussing there was no easement). Additionally, the Temple did not hold the permit. Reason Alliance Ltd. applied for and received the permit. The Temple did not.

Appellate Case: 21-3079    Page: 40    Date Filed: 04/04/2022 Entry ID: 5143291

**III. The district court properly denied the Temple's motion to amend its complaint for untimeliness, failure to show good cause, and futility.**

This Court reviews the denial of a motion for leave to amend for an abuse of discretion, reviewing de novo a denial based on the futility of the proposed amendments. *Kmak v. Am. Century Cos.*, 873 F.3d 1030, 1034 (8th Cir. 2017) (citations omitted). A district court does not abuse its discretion in denying leave to amend where the movant fails to show good cause and diligence in meeting the scheduling order's deadlines. *Id*. Nor does good cause exist where the proposed new claims are "legal variations on a theme the parties had been litigating for years." *Id*. And a district court does not abuse its discretion in denying a motion to amend where the "proposed amendments were untimely, relied on previously available documents and facts, and would have been futile." *Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 645 n.4 (8th Cir. 2021).

## A. The Temple's motion to amend was untimely and failed to show good cause.

The Temple failed to demonstrate good cause to amend the complaint after the court-ordered deadline.[93] The Temple did not seek to amend its complaint until the close of discovery, which was nearly two years after the Temple commenced the action and more than a year after the deadline to amend pleadings had passed. The district court correctly found that the Temple's proposed amended complaint was not based on a change of law or the emergence of new facts that were not previously available.[94] Indeed, the Temple prefaced its proposed amended complaint with an "explanatory note" asserting that the "core factual allegations are still the same" as the original complaint.[95] Moreover, most of the amended factual allegations in the proposed amended complaint were either matters of public record or facts that the Temple "knew or had access to when it filed its original complaint."[96]

---

[93] A76–79; R.Doc. 109 at 22–25.

[94] A78; R.Doc. 109 at 24.

[95] A78; R.Doc. 109 at 24.

[96] A78; R.Doc. 109 at 24.

Appellate Case: 21-3079    Page: 42    Date Filed: 04/04/2022 Entry ID: 5143291

Thus, with due diligence, the Temple could have included the expanded factual allegations in its original complaint.[97]

If this Court agrees that the district court did not abuse its discretion in determining that the Temple failed to show good cause to amend, it need not address futility as an alternative reason to affirm. *Kmak*, 873 F.3d at 1035.[98]

**B.    The Temple's motion to amend was futile.**

The district court correctly concluded that the amended claims were futile.[99] "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (internal quotation marks omitted). The Temple failed to demonstrate good cause for amending the complaint based on the futility of the proposed amended claims.[100]

---

[97] A50; R.Doc. 79 at 27 (citations omitted). *See* CityApp_265-66; R.Doc. 92 at 8–9; *see also* App. 398; R.Doc. 1 ¶ 226 ("In August of 2017, TST obtained some of the City's internal emails about this matter by a public records request.").

[98] Also, the Temple did not demonstrate good cause to amend the pretrial scheduling order.

[99] A79-92; R.Doc. 109 at 25–38.

[100] A79-92; R.Doc. 109 at 25–38.

Appellate Case: 21-3079     Page: 43     Date Filed: 04/04/2022 Entry ID: 5143291

### 1. The amended free-speech claim was futile.

The district court had previously dismissed the free-speech claim because it alleged "no facts demonstrating that [the Rescinding Resolution] did not apply equally to all entities seeking to erect a display or that [the Temple] was the only organization excluded from displaying a monument in [City] Park."[101] The district court correctly concluded that the Temple's proposed amended free-speech claim was futile.[102] The Temple failed to plausibly allege that Belle Plaine closed the limited public forum in a viewpoint discriminatory manner.[103] To the contrary, Belle Plaine closed the limited public forum entirely.[104] The Temple did not plausibly allege that, while the limited public forum was open, Belle Plaine imposed any unreasonable viewpoint-discriminatory restrictions.[105] Belle Plaine had no obligation to keep open indefinitely the limited public forum.[106]

---

[101] A13; R.Doc. 46 at 13.

[102] A81–82; R.Doc. 109 at 27–28.

[103] A82; R.Doc. 109 at 28.

[104] A82; R.Doc. 109 at 28.

[105] A82; R.Doc. 109 at 28.

[106] A82; R.Doc. 109 at 28.

Appellate Case: 21-3079    Page: 44    Date Filed: 04/04/2022 Entry ID: 5143291

## 2. The amended free-exercise claim was futile.

The district court had previously dismissed the free-exercise claim because it failed to plausibly allege that Belle Plaine's closure of the limited public forum placed a substantial burden on the Temple's religious practices.[107] The district court correctly determined that the Temple's proposed amended free-exercise claim was futile.[108] The Temple did not plausibly allege a substantial burden on the Temple's religious practice.[109] Belle Plaine provided an equal accommodation by granting a limited-time permit on the same terms as any other applicant.[110] Belle Plaine's closure of the limited public forum was a neutral, generally applicable law because, when Belle Plaine closed the limited public forum, the closure applied equally to all.[111] The government is constitutionally permitted to close a limited public

---

[107] A8–10; R.Doc. 46 at 8–10.

[108] A82–84; R.Doc. 109 at 28–30.

[109] A82; R.Doc. 109 at 28.

[110] A83; R.Doc. 109 at 29.

[111] A83; R.Doc. 109 at 29.

Appellate Case: 21-3079    Page: 45    Date Filed: 04/04/2022 Entry ID: 5143291

forum.[112] And the First Amendment does not include a constitutional right to use public property as a place of worship or to erect a private structure.[113]

### 3. The amended establishment-clause claim was futile.

The establishment-clause claim was not alleged in the original complaint.[114] The district court correctly concluded that the proposed amended establishment-clause claim was futile.[115] Belle Plaine's temporary establishment of a limited public forum was viewpoint neutral on its face and in effect.[116] The Temple had an equal opportunity to place its display in City Park during the same timeframe that the Veterans Club's soldier display was permitted.[117] The soldier display was a "passive monument" that did not actively advance a particular religious doctrine or express hostility toward other religions.[118] The Temple's proposed amended complaint alleged that one of its members saw the soldier display in City Park approximately twice daily

---

[112] A83; R.Doc. 109 at 29.

[113] A83; R.Doc. 109 at 29 (citations omitted).

[114] A84; R.Doc. 109 at 30.

[115] A86; R.Doc. 109 at 32.

[116] A85–86; R.Doc. 109 at 31–32.

[117] A86; R.Doc. 109 at 32.

[118] A86; R.Doc. 109 at 32.

Appellate Case: 21-3079    Page: 46    Date Filed: 04/04/2022 Entry ID: 5143291

and the display "offended [her] because it made her feel like a second class citizen in her own town."[119] But that allegation was insufficient to state a claim under the Establishment Clause.[120] Offense does not equate to coercion, as adults often encounter speech that they find disagreeable. *New Doe Child*, 901 F.3d at 1024 (citing *Town of Greece v. Galloway*, 572 U.S. 565, 589 (2014)). As such, "an Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views." *Id.* at 1023–24 (quoting *Galloway*, 572 U.S. at 589).

Although the Temple refers to a question from "Councilor Stier" about what could be excluded from a limited public forum,[121] the answer he received from the city attorney does not help the Temple's claims. The city attorney confirmed before the entire city council that Belle Plaine could not keep satanic monuments out of a limited public forum.[122] Besides the fact that

---

[119] A85; R.Doc. 109 at 31.

[120] A85; R.Doc. 109 at 31.

[121] Br. 22–23, 62–63, 72.

[122] App. 371; R.Doc 1 (*Satanic Temple II*) at 15, ¶ 63; App. 570; R.Doc. 3 (*Satanic Temple II*); CityApp_023 (City Attorney: "That is precisely what you cannot do."). This Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders,

Councilor Stier did not receive the "assurances" the Temple suggests, one council member does not speak for the whole council. The Temple has not provided this Court with any reason to look beyond the text of the resolutions and their generally applicable, nondiscriminatory effects. "Judicial inquiries into [legislative] motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Flemming v. Nestor*, 363 U.S. 603, 617 (1960); *see also Ambassador Books & Video, Inc. v. City of Little Rock, Ark.*, 20 F.3d 858, 863 (8th Cir. 1994) (stating that the principle announced in *Flemming* and similar cases "is equally applicable to municipal ordinances").

### 4. The amended equal-protection claim was futile.

The district court previously dismissed the equal-protection claim because it failed to plausibly allege that the Temple and Belle Plaine Veterans Club were similarly situated, that the Temple is part of a suspect class, or that the Rescinding Resolution is either discriminatory on its face or has both a discriminatory purpose and discriminatory impact.[123] The district court

---

items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller*, 688 F.3d at 931 n.3.

[123] A15–16; R.Doc. 46 at 15–16.

Appellate Case: 21-3079     Page: 48     Date Filed: 04/04/2022 Entry ID: 5143291

correctly found that the proposed amended equal-protection claim was futile.[124] To state an equal-protection claim, a complaint must allege that the plaintiff was "treated differently than other persons who were in all relevant respects similarly situated."[125] A plaintiff must allege that the challenged law or government action either is discriminatory on its face or has both a discriminatory purpose and discriminatory impact.[126]

The Temple's allegations failed to plausibly demonstrate that it was treated differently than someone who was in all relevant respects similarly situated. The Rescinding Resolution applied equally to anyone wishing to install a private monument in the City Park.[127] The only other organization that applied for and received a permit to place a display in the City Park voluntarily removed its display before the City passed the Rescinding Resolution. The district court accurately observed that "it is undisputed that

---

[124] A86–90; R.Doc. 109 at 32–36.

[125] A86; R.Doc. 109 at 32 (quoting *Schmidt*, 655 F.3d at 820 (internal quotation marks omitted).

[126] A87; R.Doc. 109 at 33 (citing *Davis*, 426 U.S. at 242).

[127] A87; R.Doc. 109 at 33 ("text of the challenged policies demonstrates that both policies applied equally to all entities that sought to erect a display in [City] Park").

38

both entities received a permit on the same day, and both entities' permits were terminated at the same time."[128] The Temple did not allege facts demonstrating that Belle Plaine had control over whether the Belle Plaine Veterans Club erected its display earlier than the Temple could erect its display.[129] The Temple failed to plausibly allege disparate treatment or disparate impact.[130]

Further, the district court noted that the Temple did not allege that it is similarly situated to the Belle Plaine Veterans Club as to each entity's access to Belle Plaine policymakers.[131] The Temple and its directors are not located in Minnesota, whereas the Belle Plaine Veterans Club is in Belle Plaine.[132] This geographic difference is relevant to each entity's respective ease of access to Belle Plaine's policymakers.[133] And the Temple "undisputedly had access to Belle Plaine's policymakers."[134]

––––––––––––––––––––

[128] A88; R.Doc. 109 at 34.

[129] A87; R.Doc. 109 at 33.

[130] A88; R.Doc. 109 at 34.

[131] A88; R.Doc. 109 at 34, n.10.

[132] A88; R.Doc. 109 at 34, n.10.

[133] A88; R.Doc. 109 at 34, n.10.

[134] A90; R.Doc. 109 at 36.

39

### 5.  The amended due-process claim was futile.

The due-process claim was not alleged in the original complaint.[135] The district court correctly concluded that the proposed amended due-process claim was futile.[136] If no liberty or property interest exists, there can be no due-process violation. *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). The district court properly found that Minnesota law does not recognize a constitutionally protected property interest in the permit.[137] Belle Plaine approved a permit for up to one year that could be terminated by Belle Plaine at any time. Under the Enacting Resolution, Belle Plaine reserved the right to close the limited public forum in the City Park and terminate the permit at any time. Minnesota law "limit[s] the property rights that are entitled to due process to real property rights, final judgments, and certain vested statutory rights." *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 658 (Minn. 2012). The Temple failed to allege that it held a protected property interest. Even if the permit were a protected property interest (and it is not), the Temple did not own it—Reason Alliance Ltd. received the permit.

---

[135] A90; R.Doc. 109 at 36.

[136] A90–91; R.Doc. 109 at 36–37.

[137] A91; R.Doc. 109 at 37.

Appellate Case: 21-3079    Page: 51    Date Filed: 04/04/2022 Entry ID: 5143291

## IV. The district court properly granted summary judgment to Belle Plaine on the Temple's promissory-estoppel claim.

The district court properly granted summary judgment to Belle Plaine on the Temple's claim for promissory estoppel. The claim failed for several reasons. First, the permit was not a clear and definite promise on which the Temple reasonably relied because the permit to place a display in the City Park was revocable at will. The Enacting Resolution specifically authorized Belle Plaine's termination of the permit and the Temple understood that was a possibility. Any contrary expectation by the Temple was unreasonable. The Temple had a limited-time opportunity, for nearly four months, to display its monument in the City Park. Moreover, there was no injustice to prevent because the undisputed evidence shows that (a) Belle Plaine was not unjustly enriched, (b) the Temple was not financially harmed, and (c) the Temple did not create the display for the sole purpose of exhibiting it at the City Park.

This Court reviews a grant of summary judgment de novo and affirms when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The nonmoving party "may not rely on allegations or denials," but must substantiate its allegations with "sufficient probative evidence [that] would permit a finding in [its] favor on more than

41

mere speculation, conjecture, or fantasy." *Grant v. City of Blytheville*, 841 F.3d 767, 770 (8th Cir. 2016) (citations omitted).

Under Minnesota law, a claim for promissory estoppel has three elements: "(1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" *Hous. & Redevelopment Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 336 (Minn. 2005) (citing *Olson v. Synergistic Tech. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001)); *City of Geneseo v. Utilities Plus*, 533 F.3d 608, 617 (8th Cir. 2008) (citations omitted).

### A.    The permit was not a clear and definite promise.

The first element of promissory estoppel requires proof of a "clear and definite promise." *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371 (Minn. 1995). Belle Plaine did not make a clear and definite promise by issuing a permit. The Enacting Resolution,[138] which authorized such permits, clearly

---

[138] This resolution establishing the limited public forum did not constitute a promise. "[A] law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the [legislative body] decides otherwise." *See Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Assoc.*, 110 F.3d 547, 552 (8th Cir. 1997) (quoting *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 465–66 (1985)).

42

stated that "[i]n the event the City desires to close the limited public forum or rescind this policy, the City, through its City Administrator, may terminate all permits by giving ten (10) days' written notice of termination."[139] Belle Plaine thus reserved the right to terminate the policy—and all associated permits—at will. The attachment to the permit application form explained the Enacting Resolution's policy that Belle Plaine could terminate all permits.[140] To complete the permit application, the Temple's director affirmed compliance with this policy.[141]

Minnesota law does not recognize such a revocable permit as a promise.[142] "A promise . . . is 'a manifestation of intention to act or refrain from

---

[139] CityApp_240; R.Doc. 84-1 at 204 ¶ 13.

[140] CityApp_242; R.Doc. 84-1 at 206; *see also* CityApp_238–40; R.Doc. 84-1 at 202–04. Also, the policy did not require applicants to design and build a new display. *Id.* The policy simply set criteria for a display to be placed in the park. CityApp_239; R.Doc. 84-1 at 203, ¶ 5.

[141] CityApp_129-32; R.Doc. 84-1 at 68–71; CityApp_068–69; R.Doc. 84-1 at 7–8 (L. Greaves Tr. 44:9–45:12, 46:1–8); CityApp_107, 109; R.Doc. 84-1 at 46, 48 (TST Tr. 18:18–19:5, 32:22–33:9).

[142] "Minnesota has adopted the statement of the doctrine of promissory estoppel found at Restatement (Second) of Contracts § 90 (1981)." *Walser v. Toyota Motor Sales, U.S.A., Inc.,* 43 F.3d 396, 400–01 (8th Cir. 1994) (citing *Christensen v. Minneapolis Mun. Employees Retirement Bd.,* 331 N.W.2d 740, 749 (Minn. 1983)).

43

acting in a specified way." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 n.4 (Minn. 2014) (citing Restatement (Second) of Contracts § 2 cmt. d (1981)). Where a party "reserves the power to terminate" at any time, its agreement "involves no promise." Restatement (Second) of Contracts § 77, cmt. a, illus. 2 (1981) ("Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."); *see also* Restatement (Second) of Contracts § 2, cmt. e ("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise."). Moreover, "[e]ven if a present intention is manifested, the reservation of an option to change that intention means that there can be no promisee who is justified in an expectation of performance." *Id*.[143] A permit issued under a resolution that reserved Belle Plaine's right to terminate at will does not constitute a "clear and definite promise" that the Temple would be guaranteed unfettered access.

---

[143] Minnesota also follows the Restatement (Second) of Contracts § 2. *Lyon Fin. Servs., Inc. v*, 848 N.W.2d at 543 n.4 (citing Restatement (Second) of Contracts § 2).

Appellate Case: 21-3079    Page: 55    Date Filed: 04/04/2022 Entry ID: 5143291

Just as Minnesota law does not recognize the permit issued under the policy as a promise, neither did the Temple itself. Temple witnesses admitted that Belle Plaine could terminate a permit.[144] They also testified that there were no limits on Belle Plaine's right to terminate,[145] and that it was reasonable to expect that Belle Plaine could terminate the permits.[146] Belle Plaine's termination of the permit was authorized by the Enacting Resolution and understood by the Temple as a possibility.

Although the district court reasoned that "Belle Plaine's performance was not entirely optional," because it had a right to rescind the policy "only after providing ten days' written notice,"[147] that reasoning misinterprets the language of the policy. Nothing in the policy limited Belle Plaine's right to terminate the permits issued under it. The "ten days" provision was about

---

[144] CityApp_067–68; R.Doc. 84-1 at 6–7 (L. Greaves Tr. 40:25–42:8); CityApp_127; R.Doc. 84-1 at 66; *see also* CityApp_068-69; R.Doc. 84-1 at 7–8 (L. Greaves Tr. 45:19–46:8); CityApp_090; R.Doc. 84-1 at 29 (M. Jarry Tr. 67:13–69:15).

[145] CityApp_068; R.Doc. 84-1 at 7 (L. Greaves Tr. 42:24–43:14); *see also* CityApp_083; R.Doc. 84-1 at 22 (M. Jarry Tr. 28:10–29:9).

[146] CityApp_068; R.Doc. 84-1 at 7 (L. Greaves Tr. 42:3–8); CityApp_083; R.Doc. 84-1 at 22 (M. Jarry Tr. 28:10–29:9).

[147] A65; R.Doc. 109 at 11.

Appellate Case: 21-3079     Page: 56     Date Filed: 04/04/2022 Entry ID: 5143291

requiring a time "within which period the owner must remove their display from city property."[148] Rather than "implicitly guaranteeing" anyone "a period of at least ten days to place its display in [City] Park,"[149] the permit provided the applicant a period of ten days to *remove* a display from the City Park upon termination of the permit. If an owner had no display in the City Park, it did not need the period of ten days to remove it. Thus, the "ten days" provision was about the *removal* of displays; it was not a guaranteed minimum for displays that were not there.

If this Court construes *this permit* issued under *this policy* as a promise, there will be widespread consequences for local government bodies because such a ruling could have the force and effect of turning every government permit into a quasi-contract, *regardless* of the specific terms or conditions of the permit. That outcome would be at odds with longstanding Minnesota law and jurisprudence. *See, e.g., Meriwether Minn. Land & Timber, LLC v. State,*

---

[148] CityApp_240; R.Doc. 84-1 at 204, ¶ 13. This Court "may affirm a judgment on any ground raised in the district court, and the party that prevailed in the district court need not file a cross-appeal to raise alternative grounds for affirmance." *Transcontinental Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 758 (8th Cir. 2004) (citing *Johnson v. Enron Corp.*, 906 F.2d 1234, 1238 (8th Cir. 1990)).

[149] A65; R.Doc. 109 at 11.

Appellate Case: 21-3079    Page: 57    Date Filed: 04/04/2022 Entry ID: 5143291

818 N.W.2d 557, 567 (Minn. Ct. App. 2012) ("[A]ny perceived promise in a statute is inherently subject to the legislature's power to amend a statute, and because there is a strong presumption that statutes do not create vested and contractual rights, we conclude that the district court erred by holding that the SFIA contains an enforceable promise."). In a case involving promissory estoppel, the Minnesota Court of Appeals recognized that "[t]he Minnesota Supreme Court has indicated that estoppel may only be applied against the government when the plaintiffs, who bear 'a heavy burden of proof,' show that their interest in justice outweighs 'the public interest frustrated by the estoppel.'" *Id.* at 565 (quoting *Brown v. Minn. Dep't of Pub. Welfare*, 368 N.W.2d 906, 910 (Minn. 1985)). Government entities may not be estopped on the same terms as any other party. *Meriwether*, 818 N.W.2d at 565 (citing *Mesaba Aviation Div. v. Itasca Cty.*, 258 N.W.2d 877, 880 (Minn. 1977)); *see also Snyder v. City of Minneapolis*, 441 N.W. 2d 781, 791 (Minn. 1989). Indeed, it is "an extraordinarily rare case in which the equitable remedy of promissory estoppel" may be applied against a government entity. *Meriwether*, 818 N.W.2d at 565. Based on Belle Plaine's limited public forum policy, the Temple knew the permit's limitations. By signing the permit application, a Temple

47

director agreed to comply with the limited public forum policy,[150] which clearly stated that all permits issued were revocable at will.

Moreover, even if the permit could be considered a promise, to the extent any limited promise existed, Belle Plaine made good on it. Belle Plaine provided the Temple with the opportunity to exhibit a display in the City Park from April to July 2017. The Temple chose not to act on that opportunity. The Temple must live with the consequences of its decisions.

The Temple's argument that the "Permit, alone" was the promise[151] ignores that no standalone permit language exists. Instead, the controlling documents must be read together to understand the permit's parameters. Under the plain language of the Enacting Resolution, the permit application, and the letter granting the permit, Belle Plaine did not make a "clear and definite" promise that the Temple was *guaranteed* its display would remain in the City Park for an entire year. The Enacting Resolution, which authorized permits, specifically reserved the City's right to close the limited public forum

---

[150] CityApp_132; R.Doc. 84-1 at 71; CityApp_068–69; R.Doc. 84-1 at 7–8 (L.Greaves Tr. 44:9–45:12, 46:1–8); CityApp_084; R.Doc. 84-1 at 23 (M. Jarry Tr. 30:10–22); CityApp_107, 109; R.Doc. 84-1 at 46, 48 (TST Tr. 18:18–19:5, 32:22–33:9).

[151] Br. 82.

48

and terminate all permits.[152] Those terms were restated and attached to the permit application on a sheet that provided "Information and Requirements for Veterans Memorial Park Limited Public Forum Display Permit."[153] Permit applicants were required to affirm that these terms would apply to them.[154] A director of the Temple signed the application affirming compliance with the policy.[155] One must look at the Enacting Resolution and the permit application to determine the parameters and requirements of the permit.

To accept the Temple's argument that it was promised that it could place its display for an entire year, this Court would have to conclude that Belle Plaine's administrator had authority to issue a permit that did not comply with the Enacting Resolution. That cannot be the law. The permit could not be issued if it conflicted with the only policy authorizing the issuance of a permit in the first place. Nor could a permit be issued lawfully without a completed application. The Temple's argument lacks merit.

---

[152] CityApp_240; R.Doc. 84-1 at 204 ¶ 13.

[153] CityApp_242; R.Doc. 84-1 at 206.

[154] CityApp_244; R.Doc. 84-1 at 208.

[155] CityApp_132; R.Doc. 84-1 at 71; CityApp_068–69; R.Doc. 84-1 at 7–8 (L. Greaves Tr. 44:9–45:12, 46:1–8); CityApp_107, 109; R.Doc. 84-1 at 46, 48 (TST Tr. 18:18–19:5, 32:22–33:9).

### B. Belle Plaine did not intend to induce reliance on the permit as a promise, and the Temple did not reasonably rely upon the permit.

The Temple failed to establish the second element of promissory estoppel, which requires proof of the defendant's intent to induce reliance and proof that the plaintiff relied on defendant's inducement to the plaintiff's detriment. *Ruud*, 526 N.W.2d at 372. The district court correctly concluded that the Temple did not detrimentally rely on the permit.[156]

Any reliance on some unlimited right to keep a permit for the limited public forum is unreasonable as a matter of law. As the district court observed, "there is no evidence that Belle Plaine promised an indefinite opportunity for [the Temple] to display its monument."[157] Nor did the permit guarantee any reimbursement of the Temple's time, effort, and expense of creating a display.[158] When Belle Plaine adopted the policy under which the permit was issued, Belle Plaine expressly reserved its right to cancel the policy and close the limited public forum.[159] Accordingly, the Temple—and anyone seeking a

---

[156] A66–69; R.Doc. 109 at 12–15.

[157] A69; R.Doc. 109 at 15.

[158] A68; R.Doc. 109 at 14.

[159] CityApp_240; R.Doc. 84-1 at 204 ¶ 13.

Appellate Case: 21-3079    Page: 61    Date Filed: 04/04/2022 Entry ID: 5143291

permit under this policy—was on notice that Belle Plaine could terminate all permits at any time. Indeed, it is settled law that "the government need not keep a limited forum open indefinitely."[160] The Temple could not have reasonably relied on an unlimited right to place the display for a period of up to one year.

The record shows that the Temple knew that (1) Belle Plaine's policy was revocable at will,[161] and (2) that any costs the Temple incurred would be taken at the Temple's own risk.[162] The Temple could not and did not have any reasonable expectation that the permit would never be terminated. Thus, the Temple could not have reasonably relied on an expectation that Belle Plaine guaranteed the Temple the opportunity to display its monument for a full year.[163]

_____

[160] A12; R.Doc. 46 at 12 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

[161] App. 34; R.Doc. 1-1 at 7.

[162] CityApp_067; R.Doc. 84-1 at 6 (L. Greaves Tr. 41:14–23); CityApp_083; R.Doc. 84-1 at 22 (M. Jarry Tr. 28:10–29:9); *see also* CityApp_067–68; R.Doc. 84-1 at 6–7 (L. Greaves Tr. 40:4–41:13, 45:13–25); CityApp_086; R.Doc. 84-1 at 25 (M. Jarry Tr. 48:2–49:15).

[163] A69; R.Doc. 109 at 15.

Appellate Case: 21-3079     Page: 62     Date Filed: 04/04/2022 Entry ID: 5143291

The undisputed evidence reveals that the Temple did not detrimentally rely on the permit.[164] The district court accurately observed that the Temple expressed interest in commissioning the construction of a monument, and began expending efforts toward that goal, more than a month before obtaining the permit.[165] The permit did not say that Belle Plaine would reimburse the Temple for the time, effort, and expense of creating a display.[166] Those expenses were the Temple's responsibility.[167] The undisputed evidence shows that the Temple received monetary and in-kind contributions that exceeded the expenses associated with creating the Temple's display.[168] Moreover, the Temple had the opportunity to place its display in City Park beginning on April 3, 2017, and the permit remained effective for nearly four months, during which time the Temple could have—but did not—place its display in City Park.[169]

---

[164] A69; R.Doc. 109 at 15.

[165] A66–67; R.Doc. 109 at 12–13.

[166] A68; R.Doc. 109 at 14.

[167] A68; R.Doc. 109 at 14.

[168] A68; R.Doc. 109 at 14.

[169] A69; R.Doc. 109 at 15.

Appellate Case: 21-3079    Page: 63    Date Filed: 04/04/2022 Entry ID: 5143291

Furthermore, the requirements of Minnesota Statutes Section 412.201 preclude a determination under the equitable principles of estoppel that it is reasonable to rely on a municipality's representations as promises. *See Plymouth Foam Prod., Inc. v. City of Becker*, 120 F.3d 153, 157 (8th Cir. 1997). "No representation, statement, promises, or acts of ratification by officers of a municipal corporation or a county can operate to estop it to assert the invalidity of a contract where such officers were without power to enter into such a contract on behalf of the corporation." *Id.* Any reliance upon such alleged promises was unreasonable as a matter of law. *See id.*; *see also City of Geneseo, Illinois v. Utilities Plus*, No. CIV 05-2689 ADM/JJG, 2007 WL 1027294, at *11 (D. Minn. Apr. 3, 2007) ("[A]bsent an official act by UP's Board indicating that Kom had authority to offer A4, Geneseo's reliance on Kom's purported offer was unreasonable as a matter of law."), *aff'd*, 533 F.3d 608 (8th Cir. 2008).

## C. No injustice exists here.

The Temple failed to establish the final element of promissory estoppel—that enforcement of a promise is required to prevent an injustice. The "injustice" inquiry presents a question of law, not a question of fact. *See Faimon v. Winona State University*, 540 N.W.2d 879, 883 (Minn. Ct. App.

53

1995) (citing *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992), and *Spanier v. TCF Bank Sav.*, 495 N.W.2d 18, 20 (Minn. Ct. App. 1993)). The question "is not whether the promise should be enforced to do justice, but whether enforcement is required to prevent an injustice." *Cohen*, 479 N.W.2d at 391. Considerations of "injustice" include "the reasonableness of a promisee's reliance and a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment." *Faimon*, 540 N.W.2d at 883; *id.* at 883 n.2 (citing Restatement (Second) of Contracts § 90.1 cmt. b (1981)).

The district court correctly found no evidence that Belle Plaine was unjustly enriched.[170] The Temple did not give Belle Plaine anything of value. The display was always the Temple's property.[171] And the Temple would have remained the owner of the display, even if the Temple had chosen to exhibit it in the park. Belle Plaine also refunded the permit application fee. There is no need to apply promissory estoppel to prevent unjust enrichment of Belle Plaine. That is especially true given that the Temple was not financially

---

[170] A70; R.Doc. 109 at 16.

[171] CityApp_239; R.Doc. 84-1 at 203 ¶ 9 ("The requesting party and not the City shall own any display."); *see also* App. 28–30; R.Doc. 1-1 at 1–3 (unsigned Resolution).

54

harmed, but in fact managed to capitalize on the situation by exhibiting the display in its Salem Art Gallery.

It is undisputed that the Temple "received donations in excess of the out-of-pocket costs of the monument."[172] The record shows that the Temple raised $12,673 for the display.[173] Meanwhile, the Temple paid $8,600 total for the display: (1) $1,000 to the artist who designed the display;[174] (2) $3,600 to the fabricator who constructed the display;[175] and (3) $4,000 to its own director for "overseeing" the development of the display.[176] On this record, there is no need to prevent an injustice. There was no bargain to be enforced here. The Temple was not financially harmed. The Temple has "no evidence

---

[172] App. 160; R.Doc. 94 at 11.

[173] CityApp_108-09; R.Doc. 84-1 at 47–48 (TST Tr. 26:19–22, 30:19–31:10).

[174] CityApp_115; R.Doc. 84-1 at 54 (TST Tr. 77:2–7); CityApp_219; R.Doc. 84-1 at 163; *see also* CityApp_037; R.Doc. 83 at 13 n.62.

[175] CityApp_113-14; R.Doc. 84-1 at 52-53 (TST Tr. 63:21–66:1); CityApp_205, 207, 209-10; R.Doc. 84-1 at 149, 151, 153–54; *see also* CityApp_038; R.Doc. 83 at 14 n.63.

[176] CityApp_093–94; R.Doc. 84-1 at 32–33 (M. Jarry Tr. 80:2–19, 82:19–25; CityApp_154; R.Doc. 84-1 at 93; CityApp_112; R.Doc. 84-1 at 51 (TST Tr. 56:17–57:23); *see also* CityApp_256-57; R.Doc. 88-1 at 2–3.

Appellate Case: 21-3079    Page: 66    Date Filed: 04/04/2022 Entry ID: 5143291

of reputational harm."[177] The Temple received—but chose not to act upon—the benefit conferred by the permit. After approving the permit, Belle Plaine made available the City Park for the display from April to July.

Even if Belle Plaine had not enacted the Rescinding Resolution, by the end of the permit's one-year term on March 29, 2018, the Temple would be in the *same position* it is in now: it owns a display that may not be placed in that City Park.[178] The Temple's reasonable expectation must have been that at some point—whether upon Belle Plaine's termination notice or after the permit's one-year term—the display could not be in the City Park. Then the Temple could bring the display to Salem or sell it.[179] Even before the Rescinding Resolution, the Temple planned to show the display at the Salem Art Gallery.[180] The Temple believed that the display could generate money.[181] The

---

[177] A70; R.Doc. 109 at 16; *see also* A68; R. Doc 109 at 14, n.6; App. 225; R.Doc. 94-2 at 49 (TST Tr. 109:13–20).

[178] *See* CityApp_092; R.Doc. 84-1 at 31 (M. Jarry Tr. 74:14–75:22 (discussing CityApp_149; R.Doc. 84-1 at 88 (3:57 a.m.)).

[179] CityApp_092; R.Doc.84-1 at 31 (M. Jarry Tr. 74:14–75:22); CityApp_149; R.Doc. 84-1 at 88 (3:57 a.m.).

[180] CityApp_033–35; R.Doc. 83 at 9–11.

[181] CityApp_175, 201; R.Doc. 84-1 at 114, 145; CityApp_035; R.Doc. 83 at 11, n.47–50, *citing* CityApp_074–75, 097–98, 107, 180; R.Doc. 84-1 at 12–14 (L. Greaves

56

Temple's two directors own the gallery in the Temple's headquarters.[182] The Temple made no distinction between the gallery and the Temple's headquarters.[183] No injustice exists here to be remedied by the equitable doctrine of promissory estoppel.

## V. The district court did not err in dismissing the Temple's second lawsuit against Belle Plaine.

### A. Res judicata barred the second lawsuit.

The district court correctly determined that denial of the Temple's motion to amend the complaint in *Satanic Temple I* operated as a final judgment on the merits, and therefore barred the same complaint in *Satanic Temple II*.[184] "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Res judicata, also known as claim preclusion, "precludes the

---

Tr. 133:16–134:20, 141:15–19), 36–37 (M. Jarry Tr. 133:9–134:4), 46 (TST Tr. 20:22–21:5), 119 (4:55 p.m.).

[182] CityApp_104–05; R.Doc. 84-1 at 43–44 (TST Tr. 8:3–15, 11:8–12:3); CityApp_097; R.Doc. 84-1 at 36 (M. Jarry Tr. 133:9–11).

[183] App. 186–87; R.Doc. 94-2 at 10–11 (L. Greaves Tr. 32:9–15, 34:11–35:16).

[184] A92-99; R.Doc. 109 at 38–45.

Appellate Case: 21-3079    Page: 68    Date Filed: 04/04/2022 Entry ID: 5143291

relitigation of a claim on grounds that were raised or could have been raised in the prior action." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990). Res judicata applies "when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (internal quotation marks omitted).

The Temple did not dispute that the district court had proper jurisdiction over *Satanic Temple I*, that both lawsuits involve the same parties, and that both lawsuits are based on the same claims or causes of action.[185] The district court also found that the record clearly demonstrated that those res judicata factors were established.[186] The complaint in *Satanic Temple II* undisputedly was based on the Temple's proposed amended complaint in *Satanic Temple I*, which the district court denied based on both futility and lack of good cause due to the Temple's untimeliness and lack of diligence.[187]

_____

[185] A93; R.Doc. 109 at 39.

[186] A93; R.Doc. 109 at 39.

[187] A94; R.Doc. 109 at 40.

The district court accurately determined that the substance of the complaint in *Satanic Temple II* was, in all material respects, identical to the content of the proposed amended complaint in *Satanic Temple I*.[188] The first page of the complaint in *Satanic Temple II* admitted that the "core factual allegations" were the "same" as *Satanic Temple I*.[189]

The only dispute below concerning res judicata was whether *Satanic Temple I* resulted in a final judgment on the merits as to the claims the Temple asserted in *Satanic Temple II*.[190] The district court correctly applied the law, recognizing that "[t]he denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action."[191] The district court properly rejected the Temple's argument that res judicata cannot apply because the denial of the motion to amend in *Satanic Temple I* was decided by a magistrate judge.[192] The district court properly

---

[188] A94; R.Doc. 109 at 40.

[189] App. 357; R.Doc. 1 (*Satanic Temple II*) ¶ 1.

[190] A93; R.Doc. 109 at 39.

[191] A93; R.Doc. 109 at 39 (citing *Pro. Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003) (citing *Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir. 1997))).

[192] A94–95; R.Doc. 109 at 40–41.

concluded that the preclusive effect on *Satanic Temple II* arose from the denial of the Temple's untimely and futile motion to amend the complaint in *Satanic Temple I*.[193] The district court correctly followed the law, observing that "courts apply res judicata to claims that were the subject of an unsuccessful motion to amend even if, as here, the first-filed lawsuit had not yet reached its conclusion when the plaintiff filed a second lawsuit."[194] Allowing the Temple's second lawsuit to continue would render meaningless the district court's decision to uphold the magistrate judge's denial of the Temple's untimely and futile motion for leave to amend its complaint to add the same claims in its first lawsuit.[195]

## B. The second lawsuit's claims failed as a matter of law.

All of the Temple's claims in *Satanic Temple II* fail to state a claim for the same reasons addressed above regarding the futility of the Temple's

---

[193] A96; R.Doc. 109 at 42.

[194] A95; R.Doc. 109 at 41 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136, 140–41 (2d Cir. 2000) (holding that claims in second lawsuit were barred by res judicata because magistrate judge denied leave to amend complaint to add those claims in first lawsuit)).

[195] A95; R.Doc. 109 at 41 (citing *Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016)).

60

proposed amended complaint in *Satanic Temple I*.[196] For this additional reason, the district court's dismissal of *Satanic Temple II* should be affirmed.

## VI. The district court did not abuse its discretion in granting sanctions against the Temple's counsel.

This Court reviews the district court's imposition of sanctions for abuse of discretion, giving "substantial deference to the district court's determination as to whether sanctions are warranted because of its familiarity with the case and counsel involved." *Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006). This Court has "repeatedly approved sanctions in cases where plaintiffs attempted to evade the clear preclusive effect of earlier judgments." *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015).

Belle Plaine moved for sanctions against the Temple's counsel because the filing of *Satanic Temple II* was a frivolous attempt to circumvent the rulings in *Satanic Temple I*.[197] The district court approved sanctions, recognizing that this Court "repeatedly and unequivocally has held that 'a district court abuses its discretion by refusing to sanction a plaintiff and his counsel under Rule 11 for filing and maintaining a frivolous lawsuit when the

---

[196] *See supra*, section III(B).
[197] A99; R.Doc. 109 at 45.

Appellate Case: 21-3079    Page: 72    Date Filed: 04/04/2022 Entry ID: 5143291

plaintiff seeks to relitigate claims [the plaintiff] had been denied leave to serve against the same defendant in an earlier lawsuit.'"[198] The law on res judicata is so clear that the Temple's counsel should have known that its second lawsuit was barred by the denial of a motion to amend the complaint in its first lawsuit.[199] The Temple's tactic resulted in a waste of resources, both for Belle Plaine and for the Court.[200] This Court should affirm the sanctions.

## CONCLUSION

The Temple's appeal lacks merit. This Court should affirm.

Respectfully submitted,

Dated: April 6, 2022            **GREENE ESPEL PLLP**

 *s/ Monte A. Mills*
Monte A. Mills, Reg. No. 030458X
Katherine M. Swenson, Reg. No. 0389280
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
mmills@greeneespel.com
kswenson@greeneespel.com
(612) 373-0830

Attorneys for the City of Belle Plaine

---

[198] A93; R.Doc. 109 at 39 (quoting *Pro. Mgmt. Assocs.*, 345 F.3d at 1033).

[199] A93; R.Doc. 109 at 39.

[200] A101; R.Doc. 109 at 47.

62

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7). The brief was prepared using Microsoft Word in Office 365, which reports that the brief contains 12,857 words, excluding items listed in Fed. R. App. P. 32(f).

*s/ Monte A. Mills*
Monte A. Mills

Appellate Case: 21-3079    Page: 74    Date Filed: 04/04/2022 Entry ID: 5143291

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM-ECF system.

*s/ Monte A. Mills*

Monte A. Mills

Appellate Case: 21-3079     Page: 75     Date Filed: 04/04/2022 Entry ID: 5143291